# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John F. Grady | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 1619 | **DATE** | January 11, 2005 |
| **CASE TITLE** | Zapien et al v. Manheim Services Corp | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Plaintiffs' motion for an order authorizing notice to similarly situated persons pursuant to 29 U.S.C. § 216(b) and barring communications between defendant and potential class members concerning the merits and issues of this lawsuit [ ] is granted. ENTER MEMORANDUM OPINION. PLEASE SEE REVERSE FOR SCHEDULING INFORMATION.

(11) · x [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | | | | **Document Number** |
|---|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | number of notices | |
| | No notices required. | | | | | |
| x | Notices MAILED by judge's staff. | | | JAN 1 4 2005 | date docketed | 29 |
| | Notified counsel by telephone. | | | | | |
| | Docketing to mail notices. | | | | docketing deputy initials | |
| | Mail AO 450 form. | | | | date mailed notice | |
| | Copy to _____ | | | | | |
| KAM | courtroom deputy's initials | | U.S. DISTRICT COURT | | KAM | |
| | | | 2005 JAN 13 PM 3:27 | | mailing deputy initials | |
| | | | Date/time received in central Clerk's Office | | | |

(Reserved for use by the Court)

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

ANTONIA ZAPIEN, MARIBEL ESCOBAR,  )
and BLANCA HERNANDEZ, on behalf    )
of themselves and other similarly )
situated employees,                )
                                   )
      Plaintiffs,                  )
                                   )
      v.                           )        No. 04 C 1619
                                   )
MANHEIM SERVICES CORP., d/b/a      )
GREATER CHICAGO AUTO AUCTION,      )
                                   )
      Defendant.                   )

DOCKETED
JAN 14 2005

### MEMORANDUM OPINION

Before the court is plaintiffs' motion for an order authorizing notice to similarly situated persons pursuant to 29 U.S.C. § 216(b) and barring communications between defendant and potential class members. For the reasons explained below, the motion is granted.

### BACKGROUND

Plaintiffs, Antonia Zapien, Maribel Escobar, and Blanca Hernandez, brought suit (on their own behalf and on behalf of others similarly situated) against their former employer, defendant Manheim Services Corp. ("Manheim"), doing business as Greater Chicago Auto Auction. Plaintiffs allege willful violation of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. (the "FLSA"), and the Portal-to-Portal Act, 29 U.S.C. § 251 et seq. (Count I);

29

violation of the Illinois Minimum Wage Law, 820 ILCS § 105/1 et seq. (Count II); and violation of the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 et seq. (Count III, apparently mislabeled in the First Amended Complaint as Count V). The complaint alleges that Manheim, a wholesale automobile auction company, failed to pay overtime wages to plaintiffs and other similarly situated employees, as well as some straight time wages. Plaintiffs were employed by Manheim as "detailers," persons who cleaned automobiles prior to their sale at auction.

The FLSA allows for "collective actions" to be maintained for alleged violations of the statute as follows:

> An action to recover the liability prescribed in [certain sections of title 29] may be maintained against any employer (including a public agency) . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). This "opt-in" requirement preempts the class action procedure outlined in Federal Rule of Civil Procedure 23. See King v. General Elec. Co., 960 F.2d 617, 621 (7th Cir. 1992). Under the FLSA, a plaintiff must demonstrate that she is "similarly situated" to those potential claimants she wishes to represent. All that is required is a "modest factual showing sufficient to demonstrate that [the named plaintiffs] and potential plaintiffs together were victims of a common policy or plan that violated the

law." <u>Taillon v. Kohler Rental Power, Inc.</u>, No. 02 C 8882, 2003 WL 2006593, at *1 (N.D. Ill. Apr. 29, 2003) <u>and</u> <u>Garza v. Chicago Transit Auth.</u>, No. 00 C 438, 2001 WL 503036, at *2 (N.D. Ill. May 8, 2001) (both citing <u>Realite v. Ark Rests. Corp.</u>, 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998)).

Plaintiffs have filed a motion to give notice to similarly situated persons--"[p]ersons employed by Manheim Services, Corp., d/b/a Greater Chicago Auction as auto detailers during the last three years." (Plaintiffs' Reply, Ex. B, Proposed Notice.)[1] Plaintiffs seek to give notice only to auto detailers employed at defendant's Chicago location during the last three years, but explain that they "intend to file a supplemental motion to allow notice to a nationwide class after they confirm in discovery that the illegal compensation scheme applied to Chicago employees was likewise applied to Defendant's employees employed in its other United States locations." (Plaintiffs' Reply at 2 n.2.)

According to plaintiffs, defendant denied them and other similarly situated employees their earned overtime pay by excluding from their regular rate of pay weekly (1) "bonus" earnings, (2) "commissions," and (3) "flex credit" payments. As a result,

---

[1] With the proposed notice, plaintiffs also submit a proposed consent form for potential plaintiffs to opt in.

plaintiffs were paid "fictitiously low" overtime rates of pay. (Plaintiffs' Motion at 2.)[2]

Attached to plaintiffs' motion are the Declarations of all three named plaintiffs. Zapien states that she was employed by defendant from September 1997 until September 2003. Escobar worked for defendant from September 1999 until June 2002, and Hernandez's employment was from 1997 until April 2002. Attached to each Declaration are pay stubs showing that for each plaintiff, defendant excluded bonuses, commissions, and flex credit payments from the regular rate of pay. Plaintiffs state that the "bonus" and "commissions" were based on the number of automobiles cleaned each day and that they do not know the basis for the "flex credit" payment. Furthermore, plaintiffs state that they discussed overtime compensation with their fellow auto detailers and that those employees were paid in the same manner as plaintiffs.

Also attached to plaintiffs' motion is a copy of a memorandum sent to all Chicago detail shop employees from the general manager of the Greater Chicago Auto Auction, Art Soudek (the "Soudek Memo"). The Soudek Memo, which is dated April 15, 2004 (a month and a half after this lawsuit was filed), states in pertinent part:

---

[2] Plaintiffs cite 29 C.F.R. 778.211(c), which provides that "[b]onuses which are announced to employees to induce them to work more steadily or more rapidly or more efficiently . . . are regarded as part of the regular rate of pay. Attendance bonuses, individual or group production bonuses, bonuses for quality and accuracy of work, bonuses contingent upon the employee's continuing in employment until the time the payment is to be made and the like are in this category. They must be included in the regular rate of pay."

> During a recent review of our pay records, we realized that there was an error in the payroll process that resulted in overtime not being calculated correctly under the new pay plan that went into effect after Thanksgiving in 2003. We corrected the error in the last payroll so that all future pay will be calculated correctly. In addition, we have gone back to review all payroll records under the new plan to determine if employees worked overtime and, if so, recalculated the pay. If we determined that you are due wages for unpaid overtime as a result of this error, you will receive this pay this week in your paycheck dated April 16, 2004. These monies will be reflected as "retro" earnings.

(Plaintiffs' Motion, Ex. D.)

Defendant objects to both the issuance of a notice to similarly situated employees and to the content of the proposed notice. Defendant also objects to other requested relief, particularly plaintiffs' request that the court order defendant to avoid communicating with prospective class members about the merits and issues of their FLSA claims and precluding defendant from securing releases or waivers from employees regarding the FLSA claims.

## A.   **Issuance of Notice**

Defendant's first objection is that plaintiffs are not "similarly situated" to the proposed class members because none of them are current employees and during the three years preceding the filing of this lawsuit, "the Auction employed different pay plans at different times for detail shop employees"; the pay plan in existence at the time of plaintiffs' employment is "now obsolete." (Defendant's Response at 4-5.)   According to defendant, it

instituted a new pay plan in November 2003, subsequent to the cessation of all three plaintiffs' employment.

Defendant's argument is somewhat perplexing because plaintiffs are claiming that both the "old" and "new" pay plans (pre- and post-November 2003) were unlawful. The bigger problem with the argument is that defendant wholly fails to explain *how* the compensation schemes differed at various points in time and thus how plaintiffs would not be "similarly situated" to current employees. Defendant submits the affidavit of Art Soudek, who states that a "new pay plan for auto detailers was instituted in November 2003" but completely neglects to describe either the "old" or the "new" pay plan or explain the substantive differences. (Defendant's Response, Ex. 1, ¶ 9-11.) Moreover, plaintiffs have submitted the Soudek Memo, in which Soudek stated that overtime pay was not calculated correctly with respect to the "new" pay plan. The evidence submitted by plaintiffs--their declarations and pay stubs and the Soudek Memo--is sufficient to make the "modest factual showing" that they and potential plaintiffs were victims of an unlawful common pay policy.

Secondly, defendant contends that plaintiffs have "failed to establish that other similarly situated plaintiffs wish to opt-in or file their own cases in numbers sufficient to warrant notice to the entire group of individuals they seek to represent." (Defendant's Response at 6.) We reject this argument. The two

cases cited by defendant in support of this purported requirement are inapposite, and we know of no statutory provision or case law imposing such a requirement on plaintiffs seeking to send notice pursuant to § 216(b).

## B.   Content of the Proposed Notice

Defendant presents numerous objections to the content of plaintiffs' proposed notice. The first is that the three-year period proposed by plaintiffs (sending notice to those persons employed by defendant in the last three years) is too broad given that there were different pay plans in effect throughout those three years. We have already rejected defendant's argument regarding the pay plans, see supra, because defendant has not explained the differences between the pay plans or why those differences are significant for our purposes. Defendant offers no other reason why the issuance of notice for the full three-year FLSA limitations period, applicable where a plaintiff alleges a willful FLSA violation,[3] would be inappropriate.

Defendant also maintains that the proposed notice contains a rate of pay calculation example that is incorrect as a matter of law because it includes overtime pay in the calculation regarding the regular rate of pay. In reply, plaintiffs have modified the example contained in the proposed notice, reworking their

---

[3]   29 U.S.C. § 255(a) provides that "a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued."

calculations. The example is not absolute; it does not say what is and is not a correct calculation. Instead, it includes prefatory language indicating what plaintiffs *claim* is the appropriate calculation. Moreover, plaintiffs have added a sentence to the proposed notice stating that defendant disagrees that plaintiffs' method is correct for calculating the regular rate of pay for overtime purposes. The revisions adequately address defendant's concerns.

Additionally, defendant objects to the inclusion of this case's caption on the proposed notice. The caption, together with the statement that "THIS NOTICE AND ITS CONTENTS HAVE BEEN AUTHORIZED BY THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS," defendant argues, "gives the inaccurate impression that this Court recognizes this case as having merit." (Defendant's Response at 13.) We are unpersuaded, especially considering that defendant fails to acknowledge that immediately after the above-quoted sentence, the proposed notice states: "THE FEDERAL DISTRICT COURT HAS TAKEN NO POSITION IN THIS CASE REGARDING THE MERITS OF PLAINTIFFS' CLAIMS OR DEFENDANT'S DEFENSES." In their reply, plaintiffs have also removed "Judge Grady" from the case caption in the proposed notice. We do not believe that the proposed notice, as modified by plaintiffs, suggests the appearance of judicial sponsorship merely by including the case caption.

All of defendant's objections to the content of the notice, therefore, are either rejected or have been adequately addressed by plaintiffs' modifications.

## C.   **Defendant's Communications with Potential Plaintiffs**

Plaintiffs seek an order preventing defendant from communicating with persons similarly situated to plaintiffs (the 39 or so auto detailers at the Greater Chicago Auto Auction) regarding this case or those persons' rights under the FLSA. Plaintiffs contend that we should issue such an order because of the Soudek Memo, which, as described supra, defendant sent to Chicago detail shop employees a month and half after this lawsuit was filed. Plaintiffs claim that the Soudek Memo misled members of the potential opt-in class for two reasons: (1) it created the impression that any improprieties in defendant's compensation plan existed only after November 2003 (and not both before and after November 2003, as plaintiffs allege); and (2) it misled potential class members into believing that defendant has already satisfied its overtime pay obligations by paying the "retro" compensation to which the Memo refers.

Defendant makes much of the fact that the Soudek Memo did not explicitly refer to plaintiffs' lawsuit. That is of little significance because the subject of the Memo--an aspect of calculating overtime pay--is closely related to the subject of the instant action. Moreover, the timing of the Memo is suspect,

coming a month and a half after the filing of plaintiffs' complaint. It would be a reasonable inference that the Memo was indeed designed to interfere with a potential class of opt-in plaintiffs.

Defendant also argues that the order sought by plaintiffs "in effect would bar Defendant from having any discussions with its employees that are in any way related to compensation." (Defendant's Response at 7.) This argument overstates the nature of the relief plaintiffs are seeking: an order directing defendant to avoid communication with prospective class members concerning the merits and issues of the FLSA claims in this lawsuit and precluding defendant from securing releases or waivers from employees concerning the FLSA claims.

Given the content and the timing of the Soudek Memo, we believe that the order sought by plaintiffs would be appropriate.[4] We also approve the following language included by plaintiffs in the proposed notice that is intended to address any possible effects of the Soudek Memo: "You are eligible to participate in this lawsuit even if you have received and/or accepted payments from Defendant in the last ninety (90) days relating to overtime allegedly owed to you."

---

[4] See Taillon, 2003 WL 2006593, at *4 ("Defendant also objects to the notice because the proposed notice precludes Defendant from communicating with class members. District courts have discretion to limit communication between parties and class members. An order limiting Defendant's communication with class members regarding this [FLSA] action will cause Defendant no harm and generally promote a fair notification procedure." (citation omitted).)

D.  **Other Requested Relief**

In their motion, plaintiffs also requested that defendant be ordered to (1) bear the costs of notice as a result of its contacts with the putative class; and (2) produce to plaintiffs a list of each member of the potential opt-in class contacted by defendant since plaintiffs filed the complaint, together with a description of such contact. Plaintiffs abandon their requests for this relief in their reply. Both requests would be denied in any event. It is well-settled that plaintiffs bear the costs of notice, and the Soudek Memo did not add to those costs in any way. Plaintiffs fail to cite any authority for shifting the costs of notice. Moreover, plaintiffs fail to explain the purpose or need for the list of potential class members contacted by defendant.

Finally, plaintiffs request that we direct defendant to provide, within 21 days of an order approving the notice and consent form, the names and addresses of all persons employed by defendant as auto detailers within the last three years. Although plaintiffs are not specific about whether their request is limited to auto detailers at the Greater Chicago Auto Auction or nationwide, we interpret the request as limited to the Chicago auto detailers because that is the class of employees to whom plaintiffs are seeking to send notice at this point. Plaintiffs' request for an order directing the production of those employees' names and addresses will be granted.

## CONCLUSION

Plaintiffs' motion for an order authorizing notice to similarly situated persons pursuant to 29 U.S.C. § 216(b) and barring communications between defendant and potential class members concerning the merits and issues of this lawsuit is granted.

Defendant is ordered to (1) submit to plaintiffs, within twenty-one (21) days, the names and addresses of all persons employed as auto detailers at the Greater Chicago Auto Auction within the past three years; and (2) refrain from communication with current and potential class members concerning the merits and issues of their FLSA claims, including attempts to secure releases or waivers of the claims.

Plaintiffs' proposed Notice and Consent, which are attached to Plaintiffs' Reply as Exhibits B and F, are approved and shall be sent to all potential class members (i.e., persons employed as auto detailers at the Greater Chicago Auto Auction within the last three years) by March 1, 2005. Potential opt-in plaintiffs may return their consent forms to opt into this litigation by May 2, 2005, and plaintiffs' counsel is given until May 9, 2005 to file those consent forms.

DATE:          January 11, 2005

ENTER:

John F. Grady, United States District Judge